IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| MORGAN KEITH HANSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 323-026 |
| ) | |
| MARTIN O'MALLEY, Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant.[1] ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff appeals the decision of the Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that Plaintiff's motion for judgment on the pleadings be **DENIED**, (doc. no. 16), the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the **CLERK** to substitute Martin O'Malley, Commissioner of Social Security Administration, as the proper Defendant.

**I.     BACKGROUND**

Plaintiff protectively applied for SSI on January 28, 2020,[2] and he alleged a disability onset date of August 11, 2005.  Tr. ("R."), pp. 17, 223.  However, he later amended his alleged onset date, through counsel and in writing, to his protective filing date of January 28, 2020.  R. 17, 251.  Plaintiff was forty years old on January 28, 2020, and was forty-three years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration.  R. 32, 34, 223.  Plaintiff's alleged disabilities are based upon depression, anxiety, obesity, dyslexia, attention deficit disorder, panic attacks, various phobias, high blood pressure, lower back pain, problems communicating, bad anxiety when driving, thyroid problems, and low testosterone.  R. 257.  Plaintiff reported completing school through the twelfth grade, R. 258, and prior to his alleged disability date, accrued a history of past work that included a dishwasher at a restaurant, a dough presser at a pizza chain, a press operator at a newspaper company, and a stocker at a retail store, although none of the jobs qualified as past relevant work under the applicable regulations, R. 32, 259.

The Social Security Administration denied Plaintiff's application initially and on reconsideration.  R. 75-108.  Plaintiff requested a hearing before an ALJ, R. 130, and ALJ George L. Evans held a hearing on August 17, 2022, R. 40.  Represented by counsel, Plaintiff appeared by teleconference and testified, as did a vocational expert ("VE"), Dr. Robert Brabham, Sr.  R. 40-74.  On September 2, 2022, the ALJ issued a decision finding Plaintiff not disabled.  R. 14-34.

---

[2] The Court notes a discrepancy in the record in that Plaintiff's "Application Summary for Supplemental Security Income" reflects an application date of February 3, 2020.  R. 223.  However, the ALJ and the Commissioner referred to January 28, 2020, as the application date, see R. 17; Comm'r's Br., p. 2, and Plaintiff referred to the application as being filed in "January 2020," Pl.'s Br., p. 2.  As the discrepancy is not material to the Court's analysis, the Court adopts January 28, 2020, as the application date in this Report and Recommendation for consistency with the ALJ's decision and the parties' briefing.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 28, 2020, the amended onset date and protective application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: morbid obesity; hypertension; depression; anxiety; and borderline intellectual functioning (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 416.967(a)[3] except he can occasionally bend, stoop or squat; he can carry out, understand and remember simple instructions; he can use judgement to make simple work related decisions; he can deal with occasional changes in a routine work setting; he can occasionally interact with supervisors and co-workers, but not the public; he can perform work at a specific production rate; and he cannot be required to work exposed to concentrated pulmonary irritants. The claimant has no past relevant work (20 CFR 416.965).

5. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a). Thus, the claimant has not been under a disability, as defined in the Social Security Act, since January 28, 2020, the date the application was filed (20 CFR 416.920(g)).

R. 14-34.

When the Appeals Council denied Plaintiff's request for review of the ALJ's decision, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review, 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting remand, arguing the RFC is not supported

---

[3] "Sedentary work" is defined as:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) and 416.967(a).

3

by substantial evidence, the hypothetical question posed to the VE was incomplete, and the jobs the ALJ found Plaintiff can perform conflict with Plaintiff's abilities. (See doc. no. 17, "Pl.'s Br.") The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. (See doc. no. 20, "Comm'r's Br.")

## II.   STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be

grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

**III.   DISCUSSION**

Plaintiff argues the record supports a more limited finding than the RFC reflected, which caused cascading errors at steps four and five of the sequential evaluation process. Pl.'s Br., pp. 1-2. The ALJ found Plaintiff had the RFC to perform sedentary work but imposed several limitations, including non-exertional limitations to account for Plaintiff's severe mental impairments: Plaintiff is limited to simple instructions and work-related decisions, occasional changes in a routine work setting, and occasional interaction with supervisors and co-workers, but no interaction with the public. R. 24. Primarily, Plaintiff believes this RFC is not supported by substantial evidence because the RFC omitted specific limitations discussed by psychologist Dr. John Whitley and State Agency psychiatrist Dr. Aroon Suansilppongse. Pl.'s Br., pp. 4-15. Plaintiff argues the deficient RFC then caused two subsequent issues with the ALJ's decision. First, the VE's testimony was based on a deficient RFC. Id. at 14-15. Second, the ALJ failed to discuss and resolve apparent conflicts between Plaintiff's abilities and the job requirements in the

5

Dictionary of Occupational Titles ("DOT") for jobs the VE testified Plaintiff can perform. Id. at 15-25. The Court finds the RFC is supported by substantial evidence, so the ALJ's decision should be affirmed.

  A. **Formulating Plaintiff's RFC**

    1. **Step Four Framework for Formulating Plaintiff's RFC**

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining whether a claimant can return to her past relevant work, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

6

## 2.     Plaintiff's RFC is Supported by Substantial Evidence

Plaintiff's first argument arises from the ALJ's use of evidence[4] in formulating the RFC. The first piece of evidence at issue is a December 2021 psychological evaluation by consultative examiner Dr. Whitley, R. 605-09, while the second piece of evidence at issue is a December 2021 mental RFC assessment by State Agency consultant Dr. Suansilppongse, R. 100-04.  The ALJ found Dr. Whitley and Dr. Suansilppongse's evidence "generally persuasive," "well-supported by their rationales," and "consistent with and supported by the longitudinal record," but the ALJ qualified this praise, noting he "articulated work-related mental limitations with greater specificity" than Dr. Whitley and Dr. Suansilppongse. R. 30-31.  Plaintiff argues the ALJ's RFC assessment failed to account for three limitations described by Dr. Whitley:  (1) Plaintiff would "most likely" be precluded from work tasks requiring literacy; (2) his remote, recent, and immediate memory abilities are limited; and (3) his "ability to sustain effort, focus, and persistence over an 8-hour workday would be of a moderate impairment for anything more than simple levels of change, stress, demands, and pressure." R. 608; Pl.'s Br., p. 8.  Plaintiff also argues the RFC assessment failed to account for two limitations described by Dr. Suansilppongse:  (1) "[Plaintiff] has mental capacity for simple work-related activity (1-2 step tasks)," R. 104, and (2) he would experience "occasional interfere[nce] with his ability for sustained concentration and persistence or for task completion," R. 102; see also Pl.'s Br., p. 10.  Plaintiff argues the ALJ's failure to

---

[4] The Court notes a disagreement between the parties regarding whether Dr. Suansilppongse's Mental RFC Assessment is properly categorized as a "medical opinion" or a "prior administrative medical finding" pursuant to 20 C.F.R. § 416.913(a).  See Comm'r's Br., p. 7 n.4.  Although the Court finds Dr. Suansilppongse's assessment to be a prior administrative medical finding, see 20 C.F.R. §§ 416.913(a), 416.1400, and refers to it as such herein, this categorization is not material to the Court's analysis, as the requirements to consider medical opinions and prior administrative medical findings are the same.  See R. 29-31; 20 C.F.R. § 416.920.  Thus, when the Court refers to "medical opinions" throughout this Report and Recommendation, the term is inclusive of prior administrative medical findings.

7

include these limitations in the ultimate RFC assessment, despite finding Dr. Whitley and Dr. Suansilppongse's assessments persuasive, supported, and consistent, was error. Pl.'s Br., pp. 4-11. Plaintiff further argues records including intelligence and academic ability tests performed by Plaintiff's high school in 1995 and a work evaluation report from the Easter Seals in 2015 provide additional support for the limitations opined by Dr. Whitley and Dr. Suansilppongse.

To start, finding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC. The RFC "is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive." Beegle v. Soc. Sec. Admin., Com'r, 482 F. App'x 483, 486 (11th Cir. 2012); Nichols v. Kijakazi, No. 320-CV-224, 2021 WL 4476658, at *8 (M.D. Ala. Sept. 29, 2021) ("The ALJ was under no obligation to adopt verbatim all of [the doctor's] limitations into the RFC.") Indeed, per the regulations, the ALJ cannot defer or give any specific evidentiary weight to any medical opinion. 20 C.F.R. § 416.920c(a). Instead, the ALJ is to examine the persuasiveness of medical opinions and formulate an RFC that is supported by substantial evidence. Plaintiff does not point to any error in how the ALJ addressed Dr. Whitley and Dr. Suansilppongse's opinions, as the ALJ appropriately considered the factors required by 20 C.F.R. § 416.920c(c). The error described is only in the ALJ's subsequent RFC determination which was not as restrictive as Plaintiff believes Dr. Whitley and Dr. Suansilppongse's opinions require.

The Court finds the RFC is supported by substantial evidence. The ALJ examined evidence from various medical providers and consultative examiners, including Dr. Whitley and Dr. Suansilppongse, as well as Plaintiff's own testimony showing Plaintiff could carry out simple instructions and work-related decisions. R. 45, 61, 65, 94, 101-02, 607-08. That evidence also showed Plaintiff could manage occasional changes in a routine work setting. R. 64-65, 100-01,

8

103-04, 608.  Because of his limitations, he is best suited for jobs that require only occasional interaction with supervisors and co-workers, but no interaction with the public.  R. 102-03, 606-08.

Moreover, substantial evidence demonstrates, despite Dr. Whitley's observation Plaintiff would "most likely" be precluded from work tasks requiring literacy and the ALJ's finding that Plaintiff has a severe impairment of borderline intellectual functioning, Plaintiff is not functionally illiterate.  See 20 C.F.R. § 416.964(c); see also R. 51-52, 57, 66, 257, 268-90, 331, 374, 607.  During the hearing, the ALJ asked Plaintiff about his literacy abilities and Plaintiff testified he could read and write well enough to take a driver's license exam without assistance and order food off a menu at a restaurant he had not previously visited, R. 51-52.  Plaintiff's testimony further revealed a prior job he held included mostly "computer work," R. 57, and he met his girlfriend through a dating website, R. 66.  In his decision, the ALJ further cited records demonstrating Plaintiff uses text messaging, R. 331, his "performance on [] spontaneous writing subtests f[ell] within the average range" during testing in high school, R. 374, and he uses the Internet, R. 607.  The record further reflects Plaintiff personally completed several of the forms required to apply for Social Security benefits.  R. 257, 268-290.  Thus, substantial evidence supports the absence of any literacy limitations in Plaintiff's RFC, as the record provides no support for the proposition that Plaintiff has an "inability to read or write."  See 20 C.F.R. § 416.964(c); see also Peterson v. Comm'r of Soc. Sec., No. 21-10086, 2021 WL 3163662, at *4 (11th Cir. July 27, 2021) (*per curiam*) ("Peterson fails to demonstrate that the ALJ should have found him to be illiterate because Peterson indicated that he could read and understand English and write more than his name.  Peterson also completed his function report without assistance from anyone, indicating that he is not illiterate."); Turner v. Comm'r of Soc. Sec., 182 F. App'x 946, 949 (11th Cir. 2006) (*per

9

*curiam*) (finding "although [Plaintiff's] abilities are more limited than her high school diploma implies," Plaintiff was not functionally illiterate where she stated she could write and daily activities provided evidence of literacy).

This evidence provides substantial support for the RFC. The ALJ did not find Plaintiff could perform all ranges of work with *no* limitations. The ALJ instead included several non-exertional limitations in the RFC that specifically relate to functional limitation evidence before the ALJ. The RFC limits Plaintiff to work involving simple instructions, simple decisions, few changes, occasional interaction with coworkers and supervisors, and no interaction with the public. There is substantial evidence supporting each of those limitations. Plaintiff still maintains the RFC does not include some limitations discussed by Dr. Whitley and Dr. Suansilppongse such as limitations on literacy tasks, memory, and sustained concentration and persistence. However, as explained, the ALJ does not have to wholly accept a medical opinion "and incorporate into his RFC assessment any and all limitations that source suggests" merely because the ALJ finds that opinion persuasive. K.T.B. v. Comm'r of Soc. Sec., No. 320-CV-110, 2021 WL 5906372, at *2 (M.D. Ga. Dec. 14, 2021); see also Vilches v. Kijakazi, No. 321-CV-015, 2022 WL 11455775, at *4 (M.D. Ala. Oct. 19, 2022) ("There is no requirement that an ALJ include every limitation from a medical opinion verbatim in an RFC determination."). This is particularly the case where the ALJ merely found Dr. Whitley and Dr. Suansilppongse's assessments "generally persuasive." See Vilches, 2022 WL 11455775, at *3 n.2 ("The ALJ need not adopt every part of an opinion that the ALJ finds generally persuasive."). In any event, the RFC accounts for those limitations: Plaintiff is not to perform complex tasks, and he is limited to only simple instructions and work-related decisions.

All in all, the RFC is consistent with the record evidence, including evidence from Dr. Whitley and Dr. Suansilppongse. While one could credit the evidence differently to justify adding further limitations in the RFC, that is not the province of the Court. The Court's job is not to review the administrative record *de novo*, but rather is to review the record for substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant. See Crawford, 363 F.3d at 1158-59; Moore, 405 F.3d at 1211. The RFC here is supported by substantial evidence.

B.  **The ALJ Properly Relied on the Testimony of the VE**

In an argument that dovetails with the now-discredited argument that the ALJ erred in formulating the RFC, Plaintiff contends the ALJ's reliance on the VE's testimony is not supported by substantial evidence. Plaintiff argues that because the hypothetical upon which the ALJ relied did not include the more restrictive limitations which, as discussed above, Plaintiff believes should have been incorporated into the RFC, the VE's testimony cannot support the ALJ's decision there are jobs in the national economy Plaintiff can perform. Pl.'s Br., pp. 14-15.

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985). "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question [to the VE] that accounts for all of the claimant's impairments." Barchard v. Comm'r of Soc. Sec., 628 F. App'x 685, 687 (11th Cir. 2015) (citation omitted); see also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (same). However, a hypothetical question need not incorporate

alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

As discussed above, the ALJ's decision to not incorporate into the RFC the more restrictive limitations proposed by Drs. Whitley and Suansilppongse was supported by substantial evidence. Thus, the ALJ did not have to incorporate these restrictions into the hypotheticals presented to the VE. See Crawford, 363 F.3d at 1161.

The characteristics of the person in the hypothetical presented by the ALJ to the VE, and relied upon by the ALJ to conclude Plaintiff was not disabled, incorporated the supported restrictions in Plaintiff's RFC, including limitations to: (1) simple instructions and work-related decisions, (2) occasional interaction with co-workers and supervisors, but no interaction with the public, and (3) occasional changes to a routine work setting. R. 68. The restrictions described by Dr. Whitley and Dr. Suansilppongse for which Plaintiff argues were not required to be included in the RFC and the ALJ "articulated work-related mental limitations with greater specificity," (R. 31), and thus the ALJ did not have to include those limitations in the hypothetical to make the disability determination. See Borges v. Comm'r of Soc. Sec., 771 F. App'x 878, 883 (11th Cir. 2019) (*per curiam*). In sum, because the hypothetical presented to the VE, upon which the ALJ relied to find Plaintiff was not disabled, accurately and comprehensively reflected Plaintiff's characteristics as determined by the ALJ in formulating the RFC, the ALJ's reliance on the VE testimony was proper. See McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63.

### C. Limitations Properly Excluded from the RFC Cannot Establish the Basis for a Conflict Between the VE's Testimony and DOT Job Descriptions

In another argument that dovetails the now-discredited argument that the ALJ erred in formulating the RFC, Plaintiff contends the jobs identified by the VE and ALJ that Plaintiff can perform conflict with Plaintiff's limitations that should have been reflected in the RFC. Specifically, Plaintiff argues two types of limitations conflict with the jobs identified by the VE: (1) the limitation to simple, one- or two-step tasks described by Dr. Suansilppongse and (2) Plaintiff's limited literacy abilities. Plaintiff argues that because the ALJ did not explain and resolve these conflicts, Plaintiff was prejudiced at step five of the sequential evaluation process. Pl.'s Br., pp. 15-16.

When considering a VE's testimony pursuant to Social Security Ruling 00-4p, ALJs "have an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the DOT and resolve them." Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1356 (11th Cir. 2018). "An 'apparent conflict' is 'a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony.'" Ragusa v. Comm'r of Soc. Sec., No. 22-11935, 2023 WL 6319307, at *3 (11th Cir. Sept. 28, 2023) (*per curiam*) (quoting Washington, 906 F.3d at 1356). "Once the conflict has been identified, the Ruling requires the ALJ to offer a reasonable explanation for the discrepancy, and detail in his decision how he has resolved the conflict." Washington, 906 F.3d at 1356. In other words, "[w]here the VE's evidence is inconsistent with the information in the DOT, the ALJ must resolve the conflict before relying on the VE's evidence to support a determination that a claimant is or is not disabled." Buckwalter v. Acting Comm'r of Soc. Sec., 5 F.4th 1315, 1321 (11th Cir. 2021).

Plaintiff's argument regarding "apparent conflicts" fails because the ALJ properly did not include the limitations Plaintiff argues for in the RFC, so no conflict exists between the RFC, the VE's testimony, and the DOT descriptions of the jobs identified by the VE and ALJ. As discussed above, the ALJ did not err by limiting Plaintiff to simple, one- to two-step tasks as suggested by Dr. Suansilppongse, instead limiting Plaintiff to simple instructions and work-related decisions, as this limitation was supported by substantial evidence in the record and because the ALJ was not required to include in the RFC every limitation included in a prior administrative medical finding the ALJ finds "generally persuasive." Likewise, the ALJ did not err by not specifically including a literacy limitation in the RFC, as substantial evidence supports that Plaintiff is not functionally illiterate and the limitations the ALJ included in the RFC would preclude tasks requiring strong literacy skills.

Because the ALJ properly omitted the limitations described by Plaintiff from the RFC and accurately described all the limitations in the RFC when posing the hypothetical question to the VE, R. 68, Plaintiff's claimed limitations that were not incorporated in the RFC cannot form the basis for a conflict between the VE's testimony and the DOT job requirements. See Buckwalter, 5 F.4th at 1324 ("Although this evidence might have been relevant for determining [Plaintiff]'s limitations in her RFC in the first instance, . . . it does not bear directly on the legal question of whether there is a conflict."); Peterson, 2021 WL 3163662, at *3 ("the ALJ did not include this limitation in [Plaintiff]'s RFC, so no conflict exists between the RFC and the DOT description"); Ragusa, 2023 WL 6319307, at *3-4 (finding no conflict where limitations Plaintiff claimed conflicted with the DOT's job description were not present in the RFC).

As discussed extensively above, the ALJ properly assessed Plaintiff's limitations and incorporated appropriate limitations in the RFC. Those limitations do not conflict with the jobs

14

identified by the VE. A reasoning level of two does not conflict with Plaintiff's limitation to simple tasks and work-related decisions. Peterson, 2021 WL 3163662, at *3 ("[T]here was no apparent conflict between an RFC limitation to simple, routine, repetitive tasks and the DOT's description of jobs requiring level two reasoning."). The Language Level 1 required for each job identified by the VE similarly poses no conflict with Plaintiff's abilities, as the ALJ properly omitted any literacy limitation from the RFC in light of extensive record evidence that Plaintiff is not functionally illiterate. See discussion supra Part III(A)(2); see also Castro v. Kijakazi, No. 620-CV-972, 2021 WL 4452790, at *4 (M.D. Fla. Sept. 29, 2021) ("The three unskilled jobs [with language level one] identified by the VE do not require significant English language literacy."). Lastly, Plaintiff's claim that his verbal aptitude abilities conflict with the Verbal Level 4 jobs identified by the VE is based on a flawed assumption that the verbal testing Plaintiff received in high school is the only evidence the ALJ considered when determining Plaintiff's RFC. However, there is no conflict between Plaintiff's verbal aptitude abilities and the jobs with a Verbal Level 4 based on the ALJ's review of all record evidence. See Joseph D. v. Comm'r, Soc. Sec. Admin., No. 319-CV-072, 2021 WL 9667330, at *25 (N.D. Ga. Mar. 30, 2021) (finding no conflict where "verbal comprehension IQ scores placed [Plaintiff] 'between first and second percentile,' all three jobs the VE identified were Verbal Level 4, and "claimant's 'own statements and his school and work history support that he could do the minimal reading and writing required'" for the jobs). In sum, the ALJ properly formulated and presented the RFC in the hypothetical posed to the VE, so there is no conflict, and there remains no conflict when the requirements of the jobs identified by the VE are compared to Plaintiff's abilities and limitations.

IV. **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that Plaintiff's motion for judgment on the pleadings be **DENIED**, (doc. no. 16), the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 22nd day of January, 2024, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA